UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

PERRY REICH,

                  Defendant.
----------------------------------------------------------------X

MEMORANDUM & ORDER
04 CR 587 (NGG)

GARAUFIS, District Judge.

On April 5, 2005, the defendant moved this court for an order *in limine* to prevent the government from introducing into evidence a forged fax allegedly sent by the defendant to the law offices of Joel Davidson. The defendant asserts that the document the government seeks to introduce into evidence is not the fax that originally came through Davidson's fax machine. According to the defendant, because the document's authenticity is in dispute, he would be unduly prejudiced were the fax to be admitted into evidence. In addition, following a hearing in which this court heard testimony regarding the authenticity of the document at issue, the defendant renewed his motion to dismiss the indictment. For the reasons set forth below, the defendant's motion *in limine* and renewed motion to dismiss the indictment are DENIED.

I.     FACTUAL AND PROCEDURAL HISTORY

Reich was a defendant in a civil lawsuit, <u>Ryan, Beck & Co, LLD v. Fakih et al.</u>, No. 02 Civ. 4052 (E.D.N.Y.) (Mann, J.), where the plaintiff had sought to preclude Reich and the other defendants from seeking arbitration in connection with stock trading losses. On June 17, 2003, a forged order, purportedly from Magistrate Judge Roanne L. Mann, was faxed to the office of the

1

plaintiff's attorney, Joel Davidson. The order recalled and vacated previous orders denying a preliminary injunction, enjoined the parties from proceeding with an arbitration hearing, and recused Judge Mann from further proceedings related to the case. The order was quickly discovered to be fraudulent. On June 18, 2003, Judge Mann issued an order stating that the June 17, 2003 order was "entirely fraudulent" and not part of the court file.

Following an investigation led by FBI Special Agent Rick Wilfling,[1] Reich was indicted on two counts of Obstruction of Justice, one count of Forgery of a Judge's Signature and one count of Making a False Statement. On April 5, 2005, Reich filed a motion *in limine* to exclude the admission at trial of the document the government maintained was the forged fax that came through Davidson's fax machine on the grounds that it was not authentic.

On May 24, 2005, I accepted the testimony of Naomi Weinberg, who at the time was an associate at Davidson's firm, Agent Wilfling, and Mark Alcock, a certified forensic examiner retained by the defendant. On May 26, 2005, I accepted testimony from Maureen Vollers, Davidson's assistant. Vollers testified that she worked for Davidson for five years conducting basic secretarial duties, including receiving and distributing faxes throughout the office. (Hearing Transcript, May 26, 2005 ("May 26 Tr.") at 3, 5, 20). Vollers had a small office which contained her desk, a fax machine which was located adjacent to her desk, and a file cabinet located behind her desk. (Id. at 4; Hearing Transcript, May 24, 2005 ("May 24 Tr.") at 48). The fax machine in Vollers' office received faxes for the entire Davidson law office. (May 26 Tr. at 5). Vollers' procedure was to distribute faxes soon after they arrived. (Id. at 5, 20). Vollers

---

[1] The facts surrounding Agent Wilfling's investigation are set forth in further detail in my March 3, 2005 Order.

testified that sometime shortly after 11:00 a.m. on June 17, 2003, while at her desk, she noticed that a fax had been received. (Id. at 5, 11). She observed from the cover page that the fax appeared to have come from the court. (Id. at 7, 19). As she was looking at the fax, Naomi Weinberg walked by. (Id. at 5). Vollers knew that Weinberg was responsible for the matter to which the fax related, and Vollers handed the fax directly to Weinberg. (Id. at 5, 6).

Weinberg, a part-time attorney with the Davidson firm, was monitoring the Fakih case, to which the fraudulent order was related, while Davidson underwent surgery. (May 24 Tr. at 5, 10). Weinberg had only been working at the Davidson office since May 26, 2003 and prior to this date had no knowledge about the case. (Id. at 8). Weinberg testified that Vollers handed her the fax at approximately 11:15 a.m. (Id. at 39). After reviewing the order, she faxed it to Davidson at his home. (Id. at 12). The next morning, under instructions from Davidson, she faxed the three-page order, accompanied by a newly-generated cover letter, to the client as well as co-counsel across the country. (Id. at 13-14). Weinberg asserted that she did not send, nor were any copies made of, the original cover sheet accompanying the fraudulent order. (Id. at 23). She further testified that she believed that the document in question was the original fax, or an exact duplicate thereof. (Id. at 46). Weinberg also testified that the general procedure within the office was to retain original documents and send out photocopies. (Id. at 29). Upon discovering the fax was a fraudulent order, Weinberg kept the fax in a folder on her desk. (Id. at 20).

Mark Alcock, a certified forensic examiner retained by the defendant, testified that on March 23, 2005 he examined the fax machine and the document in question. (Id. at 55, 56). Alcock stated that he believed the document was a copy and not the original forged fax, due to various anomalies, such as the skewing of the text. (Id. at 59, 71). Alcock also asserted that

3

degradation in the document in question indicated that the document is a second generation document, a copy of a copy, and not an original fax. (Id. at 59, 94). Alcock reviewed the facsimile transmission log and observed that at the purported time of receipt, the log recorded the receipt of a two-page fax even though the document at issue is four pages. (Id. at 60).

## II.     THE DEFENDANT'S MOTION *IN LIMINE*

The defendant claims that because there is a genuine issue as to the authenticity of the forged order, it would be unfair to admit the duplicate in lieu of the original. However, because witness testimony indicates that the document in question is the forged order faxed to Davidson's office, or an exact copy thereof, the defendant's concerns regarding the reliability of the document go to the weight of this evidence before the jury, not to its admissibility.

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, the government claims that the document in question is a facsimile of the forged order sent to the law offices of Joel Davidson.

Rule 901's authentication requirements are satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999). Testimony of a witness with knowledge that "a matter is what it is claimed to be" is sufficient to authenticate a document. Fed.R.Evid. 901(b)(1). Here, Vollers and Weinberg both testified that the document in question is the original forged fax, or an exact copy thereof, thereby substantiating its authenticity as provided under Rule 901(b)(1). (May 26 Tr. at 8; May 24 at Tr. 46). This court finds Vollers and

4

Weinberg's testimony highly reliable. Vollers was responsible for disseminating faxes to the appropriate individual in the office. The fax machine was located in her office, by her desk and was under her control. There is no evidence to indicate that the fax was tampered with in the time between when it was received and when Vollers noticed it and handed it to Weinberg. Weinberg reviewed the fax prior to faxing it to Davidson and was competent to testify that the document submitted by the government is the fraudulent order, or an exact copy thereof.

As the defendant acknowledges, Rule 901 "'does not erect a particularly high hurdle.'" United States v. Dhinsa, 243 F.3d 635, 658-59 (2d Cir. 2001) (quoting United States v. Ortiz, 966 F.2d 707, 716 (1st Cir. 1992)). The proponent of the evidence is not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999) (internal citations and quotation marks omitted). Once Rule 901's minimal standards have been met, the ultimate reliability of the evidence is left to the jury. See United States v. Tropeano, 252 F.3d 653, 661 (2d Cir. 2001) ("Authentication of course merely renders [evidence] admissible, leaving the issue of [its] ultimate reliability to the jury."). In accordance with my broad discretion to determine whether a document has been properly authenticated, I find that the government has met the requirements for authentication under Federal Rule of Evidence 901.

Vollers and Weinberg's inability to state with certainty whether the document in question was an original or an exact copy of the forged order received at Davidson's office reflects the fact that a received fax is itself a copy, and that it is difficult for a lay person to discern the difference between a copy and a copy of a copy. However, even if the document in question is not the

5

original forged fax, but is instead a copy, it is still admissible as a "duplicate" of the original.[2]

The defendant's effort to exclude the document at issue under Federal Rule of Evidence 1003 is unavailing. Rule 1003 states that "a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed.R.Evid. 1003. The first exception is inapplicable to this case because there is no dispute as to the authenticity of the original forged order. Rather, the defendant claims that the document the government seeks to admit into evidence is a manipulated copy of the original, or in the alternative, that the forged order originated from Davidson's office and was "copied" on the fax machine, rather then sent from an outside number. As already discussed, the defendant's claims go to the weight of the evidence, not its admissibility.

Cases relied on by the defendant are inapposite to the instant action. The defendant attempts to analogize to United States v. Brandell, 35 M.J 369 (C.M.A. 1992), a case from the Court of Military Appeals wherein there was no "extrinsic evidence that the photocopies of the checks [we]re accurate reproductions of the originals." Id. at 372. Here, however, two witnesses authenticated the document at issue by testifying that if the document is not the original, than it is an exact copy. Equally unpersuasive is Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc., 320 F.3d 362 (2d Cir. 2003), cited at length by the defendant, wherein the court held that the admission of a copy would be unfair where the opposing party produced another

---

[2] "A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Fed.R.Evid. 1001(4).

copy that was materially different and where at least one other photocopied document produced by the proponent had been conceded to be a forgery. Here, by contrast, there is no evidence to suggest that document at issue, assuming it is a duplicate, is materially different from the original fax.

The defendant's claims regarding the document's authenticity do not rise to the level necessary to preclude its admission. Indeed, there are several possible explanations for the purported problems with the forged order cited by the defendant. The defendant complains that the "header" of the fax, which includes the text "Roanne L. Mann, USMJ" is skewed and was manipulated by hand. However, this may not be the header of the document faxed to Davidson's office, but rather a header derived from a legitimate source as part of the forgery that was placed on the fax prior to it being sent to create the impression that it came from the court. (Gov't Ex. 2; May 24 Tr. at 77-79). Supporting this explanation is the presence of another header to the forged order that appears upside-down on the bottom of the fax. (Gov't Ex. 2; May 24 Tr. at 77-79). The defendant also claims that because the fax log does not contain an entry for a four-page fax within the relevant time period, the four-page document at issue could not possibly have been faxed to Davidson's fax machine. However, page 3 of the forged order contains the header "Extended Page 2.1," providing a possible explanation for this apparent inconsistency. (Gov't Ex. 2).

The defendant is free to set forth its theories regarding the authenticity of the forged order to the jury. However, as the government has met the standard for authenticity, the defendant's motion *in limine* is denied.

## III. THE DEFENDANT'S RENEWED MOTION TO DISMISS

### A. Motion to Dismiss Indictment

The defendant asserts that the indictment should be dismissed due to the prosecutor's failure to present several purported discrepancies in the forged order to the Grand Jury. However, dismissal of an indictment is "the most drastic remedy" and "warranted only in extreme circumstances, when it is necessary to eliminate prejudice to the defendants or to ensure that the government attorney acts in accordance with the law." United States v. Romano, 706 F.2d 370, 374 (2d Cir. 1983) (internal citations omitted). In order to justify dismissal, a prosecutor must have "knowingly withheld 'substantial evidence negating guilt . . . where it might reasonably be expected to lead the jury not to indict.'" Id. at 374 (quoting United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979). Here, the defendant's claim, based on sheer speculation, falls far short of the extreme circumstances justifying the dismissal of an indictment. Such a claim is necessarily conjectural, as the Grand Jury minutes are confidential and were not released to the defendant. There is nothing in the record indicating that any false testimony was presented to the Grand Jury.

Even assuming, *arguendo*, that the defendant's contentions are true, namely that the prosecutor failed to produce the original document, explain discrepancies with respect to the transmission log, or present Vollers' statements regarding the timing of the fax, these oversights are insufficient to merit dismissal of the indictment. Accordingly, the defendant's motion to dismiss the indictment is denied.

### B. Renewal of Motion to Dismiss Forgery Charge

Reich renews his motion to dismiss the forgery charge in the indictment, 28 U.S.C. § 505,

because there was no benefit to the defendant from the forged order. However, as I have already ruled, under 28 U.S.C. § 505 there is no statutory requirement that the government demonstrate an actual effect, such as financial loss or gain, from the forgery. (Hearing Transcript, December 2, 2004.) As with his original motion, the defendant has cited to no case law in this Circuit to support his claim. The defendant's renewed motion to dismiss the forgery count is denied.

## IV.   CONCLUSION

For the reasons set forth above, the defendant's motion *in limine* and renewed motion to dismiss are DENIED.

SO ORDERED.

Dated: June 10, 2005  /s/ Nicholas G. Garaufis
Brooklyn, N.Y.  Nicholas G. Garaufis
United States District Judge