UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

        – against –            **04-Cr.-587(NGG)**

PERRY REICH,

              Defendant.
-------------------------------------------------------X

GARAUFIS, United States District Judge

      A jury found the Defendant Perry Reich ("Reich" or "Defendant") guilty of forgery of a judge's signature, of corruptly obstructing a judicial proceeding, and of making willfully false statements to Federal Bureau of Investigation ("FBI") agents. The Defendant now moves for a judgment of acquittal or, in the alternative, a new trial, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, respectively, for bail pending appeal, and to modify the trial transcript. For the reasons stated below, the Defendants' motions are DENIED, except for the application to modify the transcript, which is GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND

      Because the questions raised by Defendant in his post-trial motions require this court to look at the entire trial record, what follows is a detailed examination of the evidence presented at trial. Reich's convictions arise from a forged judicial order in Ryan, Beck & Co. v. Fakih, No. 02 Civ. 4052 (E.D.N.Y.) (Mann, J.) ("the Ryan Beck lawsuit"). Prior to the lawsuit, Reich, who held an account with Gruntal & Co. ("Gruntal"), a brokerage firm, filed an arbitration claim against Gruntal claiming a mishandling of his account, and then amended his claim to include

Ryan Beck & Co. ("Ryan Beck"), another brokerage firm, after Ryan Beck purchased the assets of Gruntal. (Trial Transcript ("Tr.") 328-32.) In the Ryan Beck lawsuit, plaintiff Ryan Beck sought to enjoin investors, including Reich, from arbitrating these claims against it. (Id.)

## A. *Evidence Adduced at Trial*

On June 17, 2003, at approximately 11:10 a.m., the law offices of Joel Davidson ("the Davidson firm"), the representative of Ryan Beck in the lawsuit, received by facsimile transmission a document that purported to be an order ("the forged Order"), dated June 17, 2003, issued by Magistrate Judge Roanne L. Mann, who was assigned to the Ryan Beck lawsuit. (Tr. 532-33; Gov. Ex. 1.) The forged Order recalled and vacated a previous order, dated June 3, 2003, denied a preliminary injunction, enjoined the parties from proceeding with an arbitration hearing and recused Judge Mann from further proceedings in the case. (Gov. Ex. 1.)

The forged Order was transmitted as a four page document, including a cover letter and three page Memorandum and Order. (Gov. Ex. 1.) The forged Order has Judge Mann's fax header and her signature, and the cover page appears to be from the Eastern District of New York, with Judge Mann's address and telephone number. (Id.) However, the forged Order appears to have been fashioned from the June 3, 2003 Order, which has the same caption and same third page. (Tr. 532-33; Gov. Ex. 24; compare Gov. Ex. 1 with Ex. 31.) The date of the cover page, the fax header, and the forged Order appear to have been changed by hand, and the text of the forged Order is skewed. (Tr. 533; Gov. Ex. 1.) As explained in the expert testimony presented at trial, on the first page of the document "P 01" is printed upside-down at the bottom of the page, on the second page of the document "P 02" appears upside-down at the bottom of the page, the third page of the document states above the header "Extended Page 2.1," and on the last

page of the document is printed upside-down at the bottom of the page, "Extended Page 2.2." (Gov. Ex. 1, 4.)

Phone records of Reich's home and the Davidson firm fax machine indicate that at 11:08 a.m., a call was initiated to the Davidson firm fax machine from a pre-paid AT&T calling card purchased by Reich. (Gov. Exs. 2, 35, 37.) Maureen Vollers, the secretary of Joel Davidson, who is counsel to Ryan Beck, testified that she found the forged Order on the Davidson firm fax machine tray shortly after 11:00 a.m. (Tr. 102-03, 129, 170.) Vollers and Naomi Weinberg, an associate at the Davidson firm, testified that Vollers handed Weinberg the forged Order between 11:15 and 11:20 a.m. (Tr. 104-105, 187.) Ms. Weinberg testified that she maintained control of the forged Order until she had it faxed to Joel Davidson at his home at approximately 12:30 p.m. (Tr. 183-90.) Joel Davidson testified that Reich was the only person with any relationship to the Ryan Beck lawsuit who sent a facsimile transmission to that machine that day. (Tr. 358-60.)

In response to the forged Order, the Davidson firm withdrew its June 9, 2003 application for a writ of mandamus from the Second Circuit that it filed in response to Judge Mann's previous (and still controlling) June 3, 2003 Order. (Tr. 363-64.) Mr. Davidson contacted Judge Korman, the district court judge assigned to the case, to request that an order be entered applying the rulings in the forged Order to all other former investors in the Ryan Beck lawsuit. (Tr. 361.) Judge Mann then communicated in an order that the forged Order was not issued by her. She held a status conference in which she discussed the forged Order, and contacted the Second Circuit to inform it that the forged Order should not be relied on in deciding the writ of mandamus. (Tr. 536-38, 547-48; Gov. Ex. 24.) Judge Mann's law clerk, John Marco, testified that the forged Order substantially complicated the proceedings. (Tr. 547-48.)

**B.**     *Reich Pretrial Statements and Trial Testimony*

Reich made four separate statements denying his involvement in the creation and transmission of the forged Order. Federal Bureau of Investigations (FBI) Special Agent Richard Wilfling testified that he and agent Robert Katzman interviewed Reich on July 31, 2003 ("July 31 interview"), in which Reich denied using pre-paid telephone cards, and could not recall having any interaction with Joel Davidson. (Tr. 576-77, 581.) He testified that he interviewed Reich again on August 11, 2003 ("August 11 interview"), during an FBI search of Reich's home, in which Reich admitted to contacting Joel Davidson regarding a confidentiality agreement that Reich may have faxed. (Tr. 590-91.) Confronted with telephone records showing a connection for over three minutes on July 11, 2003 between his residence and the Davidson fax machine, agent Wilfling testified that Reich explained that he may have inadvertently called the Davidson firm fax machine and disconnected, and that the call lasted over three minutes because his telephone does not always disconnect after hanging up. (Tr. 591.)

Agent Wilfling further testified that on March 3, 2004, he, agent Katzman, a government prosecutor, and Reich and his counsel met in the United States Attorney's Office for a proffer session ("March 3 proffer session"). At that session, agent Wilfling testified that Reich denied owning or using an AT&T calling card, but said that he purchased a prepaid calling card for his girlfriend in 2002. (Tr. 599.) According to agent Wilfling, Reich reiterated that he had been trying to reach Joel Davidson, but that he accidentally dialed the Davidson firm fax machine, and that his telephone sometimes did not disconnect after a call ends. (Tr. 600-01.)

At trial, Reich denied that he created or sent the forged Order, but admitted that he called the Davidson firm fax machine number on June 17, 2003, at the time in question. (Tr. 886-87,

894, 896.)  However, Reich testified that he did not intend to send a facsimile transmission, but rather had wanted to speak with Joel Davidson to resolve a discovery issue and engage in settlement discussions with the Davidson firm.  (Tr. 885.)  Reich explained that he dialed the fax number because he confused the Davidson fax and phone numbers from the Davidson firm letter head.  (Tr. 887.)  He also testified that he used an AT&T calling card to make the call because he was having trouble connecting telephone calls with his Verizon account.  (Tr. 886.)  Lastly, Reich testified that he did not actually connect with the Davidson firm, and he suggested that the telephone records showed a long communication because his computer fax modem sometimes engages his telephone line and causes the line to remain connected after the call has ended.  (Tr. 887-88.)

Regarding his capability of sending the forged Order, at trial Reich admitted that he owned a fax modem that was seized by the government, and testified that at one time he owned a Canon Fax Phone 8, but he explained that he discarded the machine in 2000.  (Tr. 892-93, 949.)

**C.**      ***Expert Testimony Regarding Facsimile Transmission of Forged Order***

Cameron Smith, an expert on the Hewlett Packard ("HP") LaserJet 3100 and fax machines generally, testified for the government regarding the facsimile transmission of the forged Order.  Smith testified that the Davidson firm fax machine is an HP LaserJet 3100, and that its transmission log for June 17, 2003 indicates that at 11:10 a.m., the machine received a three minute, eighteen second, facsimile transmission from a fax machine that had no identification field to identify the sender at 9600 bits per second ("bps") that completed successfully.  (Gov. Ex. 2; Tr. 424-25.)  Smith also testified that the length of this transmission is consistent with a facsimile transmission of a four page document, such as the forged Order, sent

at 9600 bps. (Tr. 456, 472.)

Smith testified that the call from Reich's home must have sent a fax transmission, because the Davidson firm fax machine automatically terminates calls without a fax signal within 41 seconds. (Tr. 406, 410, 413, 454-55.) He explained that the HP LaserJet 3100 changes the scale of the images sent to fit on the page. When the HP LaserJet 3100 cannot fit an image on a single page, it prints "Extended Page" on each additional page that the image requires. Thus, if a page is sent to the HP LaserJet 3100 that is 33 inches in length, the HP LaserJet 3100 prints on the first page the page number, "X," on second page "Extended Page X.1," and on third page "Extended Page X.2." (Tr. 457-59.)

Smith testified that at the government's request, he tested the "Extended Page" function by sending facsimile transmissions to the HP LaserJet 3100 of one regular page followed by one 44-inch long page.[1] Based on this testing, Smith determined that if the last three pages of a four page transmission to the HP LaserJet 3100 were attached together (thereby constituting one extra-long page), the HP LaserJet 3100 would print the image in four pages, printing "Page 2" on the second page, "Extended Page 2.1," on the third page and "Extended Page 2.2," on the fourth page, and indicate a two page fax in the transmission log. (Tr. 460-68, Gov. Exs. 75, 76.) Smith testified that the "Extended Page" prints in the forged Order were generated by the HP LaserJet 3100, and that the "P01" on the cover page was not generated by the HP LaserJet 3100. (Tr. 470-71.)

_____

[1] Smith's tests used two different types of elongated paper: three pages of "tractor feed paper," paper with perforated edges and holes on the sides to accommodate the sprockets on a tractor feed printer, with the perforated edges torn off, and one specially made page 44 inches in length. (Tr. 463.) However, Smith testified that three partially overlapped regular sheets of paper would have had the same result. (Id.)

The defense produced Mark Alcock, a forensics expert witness. (Tr. 983-86.) Alcock testified that his examination of the computers seized by the FBI showed that they did not create the forged Order, and that Reich's computer fax modem could not have sent it. (Tr. 997-99.) He disputed the reliability of Smith's tests of the "Extended Page" function on the HP LaserJet 3100, explaining that after trying twice to send multiple pages that were taped together, he jammed his machine. (Tr. 1000-01.) Alcock also testified that the "Extended Page" function could not have been triggered by a facsimile transmission sent by a fax modem and a flatbed scanner, as Reich alleged to have used in his home to fax. (Tr. 1002-03.) Alcock challenged the authenticity of the Government's exhibits. He asserted that the degraded quality of the header in the forged Order demonstrated that it was never originally sent as a facsimile transmission (Tr. 1023-27), and that the Davidson firm fax machine transmission log could have been replicated on Microsoft Word. (Tr. 1029-31.) Alcock also found plausible Reich's testimony that his fax modem could have "latched" onto the Davidson firm fax machine and prolonged the call after Reich had hung up. (Tr. 1038-39.)

Alcock admitted that he has never used a Canon Fax Phone 8, and that he did not test whether a Canon Fax Phone 8 could have transmitted the forged Order. He confirmed that the service manual states that one model of the Canon Fax Phone 8 faxes at 9600 bps. (Tr. 1001-02, 1039, 1114.) On cross examination, Alcock admitted that he is not an expert in the extended page feature of the HP LaserJet 3100. (Tr. 1069-78.) Alcock further admitted that his conclusion that the forged Order did not originate as a fax was based on assumptions about the magnification and resolution of the copy and the fax header of the copy. (Tr. 1143-49.)

As a rebuttal witness to Alcock, the government produced Yogeshwar Burchell, an expert

in the operation of the Canon Fax Phone 8. Burchell testified that the Canon service manual seized in Reich's home was most likely of the 9600 bps model (Tr. 1214), and that the Canon Fax Phone 8 does not transmit a header. (Tr. 1215-16.)

## C.    *Relevant Pre- and Post-Trial Motions*

Before the trial, the Defendant moved *in limine* to prevent the government from introducing the forged Order, arguing that the government had failed to established its authenticity. (United States v. Reich, slip op., dated June 10, 2005, at 4.) I ruled that a reasonable juror could find the forged Order to be authentic based on the testimony of Davidson firm employees Weinberg and Vollers, despite the testimony of expert witness Alcock, and denied the Defendant's motion *in limine* to exclude the document pursuant to Federal Rule of Evidence 901(a). (Id. at 7.) At trial, the Defendant sought a dismissal of the charges on the basis that Alcock established that the forged Order was not sent as a facsimile transmission from Reich's home to the Davidson firm fax machine. (Tr. 1226-35.) I denied that motion from the bench. (Tr. 1235.)

After deliberations on August 25, 2005, the jury convicted Reich of (1) forgery of a judge's signature in the forged Order; (2) obstruction of justice for his role in interfering with the Ryan Beck lawsuit; and (3) making false representations to FBI agents at the March 3 proffer session.

On September 17, 2005, Defendant moved for a judgment of acquittal or for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, based on insufficient evidence, improper impeachment of a character witness, and improper rebuttal. Reich also moved for a post-trial Franks hearing. (See Def's Mem. Supp. Pre-Trial Mot.) Defendant supplanted this

motion on November 30, 2005, withdrawing his Rule 29 bases of improper character impeachment and improper rebuttal, and his application for a post-trial <u>Franks</u> hearing, and adding as new grounds for his Rule 33 motion that the uncontradicted portions of Alcock's testimony warrant a new trial.  (Def's Ltr. Br., dated Nov. 30, 2005, at 1-7.)  Defendant also applied for several changes to the transcript, and for bail pending appeal.  (Def's Ltr. Br., dated Nov. 30, 2005, at 7.)

## II.     STANDARD OF REVIEW

### A.     Rule 29

The defendant "bears a heavy burden" on a Rule 29 claim as the court "must credit every inference that the jury may have drawn in favor of the government."  <u>United States v. Finley</u>, 245 F.3d 199, 202-3 (2d Cir. 2001) (internal quotation and citation omitted).  "The jury's verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> (emphasis in original).  In reviewing the sufficiency of evidence underlying a conviction, the court is reminded that it is the jury's duty alone to make inferences from the evidence.  <u>See</u> <u>e.g.</u>, <u>United States v. Jackson</u>, 335 F.3d 170, 180 (2d Cir. 2003).  Where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter."  <u>United States v. Autuori</u>, 212 F.3d 105, 114 (2d Cir. 2000).  In short, as the Second Circuit has put it: "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." <u>United States  v. Guadagna</u>, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation and citation omitted).

**B.     Rule 33**

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 1997). The Second Circuit has stated that a district court should exercise such authority only "in the most extraordinary circumstances." United States v. Locascio, 6 F.3d 924, 949 (2d Cir.1993). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal citation omitted).

**III.     DISCUSSION**

In this post-trial motion, Defendant argues that a Rule 29 judgment of acquittal is warranted because the evidence adduced at trial was insufficient to convict him on any of the three counts, and that in the alternative this court should grant a new trial pursuant to Rule 33 because the government failed to rebut Alcock's expert opinion that the forged Order was never sent by facsimile transmission to the Davidson firm fax machine, and the verdict is therefore against the weight of the evidence. Both these arguments lack merit.

**A.     Defendant's Rule 29 Motion for Judgment of Acquittal**

Defendant contends that a judgment of acquittal is warranted because there was insufficient evidence to support his convictions. I will proceed to examine all three counts under a Rule 29 sufficiency of the evidence standard.

### 1. *Sending of The Forged Order*

Defendant was convicted of having knowingly forged the signature of Magistrate Judge Mann for the purpose of authenticating the forged Order. (Indictment ¶¶ 11-12.) Title 18 of the United States Code makes criminal the "forg[ing of] the signature of any judge . . . of any court of the United States . . . for the purpose of authenticating any proceeding or document . . . ." 18 U.S.C. § 505.

Defendant argues that there was insufficient evidence to support the jury's verdict that Reich sent the forged Order from his home as a facsimile transmission to the Davidson firm fax machine. (Def's Mem. Supp. Post-Trial Mot., at 5-9.) Defendant points to two facts brought out in the trial, *viz*: (1) that Vollers, the secretary of Joel Davidson and the only witness who testified that the forged Order was in the tray of the machine shortly after 11:00 a.m., could not pinpoint when it arrived and did not actually witness the Davidson firm fax machine generate the forged Order (id. at 7); and (2) that Alcock, a forensics expect, concluded that the forged Order was never originally a faxed document. (Id. at 8.)

The Government provided strong evidence that Reich created and sent the forged Order as a facsimile transmission to the Davidson firm fax machine. The jury heard competent and uncontested evidence that Vollers received the forged Order from the Davidson firm fax machine tray, and that Reich had placed a phone call from his home to that machine around the time that Vollers discovered the document. Davidson firm staff testified that Reich was the only person who called the Davidson firm fax machine who had sufficient knowledge of the case to be able to create the forged Order.

Although Reich initially denied having called the Davidson firm fax machine and

possessing a phone card, Reich later recanted this statement in the face of mounting evidence and admitted that he did place the call using the phone card listed in the Davidson firm fax machine transmission log. At trial, he stated that he had meant to call Joel Davidson's telephone line, and hung up immediately after he realized that he dialed the incorrect number. However, Reich's phone records and the Davidson firm fax machine log showed a several minute communication between Reich and the fax machine, and expert testimony established that the length of this communication was consistent with Reich having sent the forged Order via facsimile transmission. Under the circumstances, a rational juror would have been justified in concluding from Reich's conflicting statements that he was not a credible witness, and could have resolved the conflicting expert opinions against Reich. To the extent that the Defendant seeks to show that he was more credible than Vollers, and that Alcock was more credible than Smith, I must "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." United States v. Bala, 236 F.3d 87, 93-94 (2d Cir. 2000).

Second, the Defendant urges that no rational trier of fact after hearing Alcock's opinion that the forged Order that did not originate as a facsimile could find beyond a reasonable doubt that Reich had sent the forged Order from his home. At trial, Alcock presented to the jury this opinion based on a forensics examination of the forged Order. Alcock concluded that the fax header had degraded in such a way as to indicate that it was never sent by fax, and that the "Extended Page" signals did not appear on the earliest generation of the forged Order received into evidence.[2]

---

[2] Insofar as Reich questions the authenticity of the Government's Exhibit 1 in an attempt to re-litigate its admissibility, I adhere to the ruling in my June 10, 2005 Memorandum and Order. (See United States v. Reich, slip op., dated June 10, 2005, at 5-7.)

It is axiomatic that a jury is free to accept or reject the opinion of an expert. This is especially true "in forensic document examination, where . . . conclusions are drawn, in large part, on subjective criteria." United States v. Starzecpyzel, 880 F. Supp. 1027, 1048 (S.D.N.Y. 1995). On cross examination, Alcock admitted that his conclusion relied on assumptions regarding the magnification and resolution of the copy of the forged Order represented by Government's Exhibit 1. The jury could reasonably have rejected Alcock's opinion that the forged Order was not originally a fax based on these assumptions. Furthermore, the jury was fully justified in rejecting Alcock's opinion that a Canon Fax Phone 8 could not have sent the forged Order in the manner described by Smith, as Alcock admitted that he never operated a Canon Fax Phone 8.

In conclusion, I find that a rational juror could have inferred from the evidence that Reich forged Judge Mann's signature to authenticate the forged Order and faxed it to the Davidson law firm. See United States v. Canady, 126 F.3d 352, 356 (2d Cir. 1997) (directing that a court "must affirm the conviction so long as, from the inferences reasonably drawn, the fact finder might fairly have found guilt beyond a reasonable doubt").

## 2.    *Obstruction of Justice*

Reich argues that no rational juror could have found that Reich sent the forged Order to the Davidson firm to "knowingly, intentionally and corruptly obstruct, influence and impede," the Ryan Beck lawsuit, in violation of 18 U.S.C. § 1512(c)(2). (Indictment ¶ 10.) Section 1512(c)(2) states that a person who "corruptly . . . obstructs . . . any official proceeding, or attempts to do so," violates this criminal provision. 18 U.S.C. § 1512(c)(2).

As a predicate matter, the defense argues that it is the Government's burden to show that

the Defendant intended to deceive *the court* in sending the forged Order to the Davidson firm. (See Def.'s Mem. Supp. Post-Trial Mot., at 9-11.) Defendant urges that because there was no proof offered that the forged Order deceived any court, that I must overturn the jury's verdict on this obstruction of justice charge.

As a relatively new provision, the few cases that discuss Section 1512(c)(2) do not specifically address the question of whether deception of a litigant in order to interfere with a judicial proceeding constitutes obstruction of justice pursuant to Section 1512(c)(2). See, e.g., United States v. Alvarez, 352 F. Supp. 2d 356, 358 (E.D.N.Y. 2005) (finding that an allegation that defendant provided a false declaration to a grand jury to defeat an indictment states a violation of Section 1512(c)(2)); United States v. Hey, No. 03-80863, 2005 U.S. Dist. LEXIS 38550, *13-*14 (E.D. Mich. 2005) (denying motions for new trial or acquittal of Section 1512(c)(2) count for offering perjured testimony to a grand jury). However, the Defendant's proposed construction of Section 1512(c)(2) does not comport with the plain meaning of the statute, which is not limited to actions directed at a court. Whether Reich faxed the forged Order directly to the court, or faxed it to opposing counsel, it may still constitute a violation of the statute if sending the forged Order could reasonably be expected to influence a court proceeding.[3] I therefore find that a violation of this statute occurs where, as here, a person acts with the intent to deceive an adverse party with the reasonable expectation that the deception will interfere with a judicial proceeding.

---

[3] If Section 1512(c)(2) required an intent to deceive the court, I would find that there was sufficient evidence for a rational juror to conclude that Reich intended in sending the forged Order to deceive the Second Circuit into believing that the writ of mandamus was moot, and that Reich drafted the Davidson law firm as an unwitting agent in the deception.

Here, the unrefuted evidence shows that Reich sent the forged Order with the reasonable expectation that it would, and that it did, obstruct the Ryan Beck litigation. Joel Davidson testified that the Davidson firm wasted time and legal expenses in withdrawing and then resubmitting its application for a writ of mandamus, and in discussing the forged Order with Judge Korman and Judge Mann. Judge Mann's law clerk testified that the forged Order wasted judicial resources in requiring Judge Mann to issue an Order and to communicate to Judge Korman and the Second Circuit that the forged Order did not come from her, and to discuss the forged Order at a status conference with the parties. A rational juror could conclude from this evidence that the forged Order obstructed the Ryan Beck lawsuit.

It can be inferred from the impact of the forged Order on the Ryan Beck lawsuit that Reich intended to obstruct the proceedings. See United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 1997) ("The law . . . recognizes that the *mens rea* elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom . . . .") Defendant's contention that the "contrived" and "crude construction" of the forged Order belies the Government's contention that it was intended to deceive is without merit. (Def.'s Mem. Supp. Pre-Trial Mot., at 12.) Testimony from employees of the Davidson firm established that the forged Order was not so facially flawed as to be dismissed as a fake instrument. On the contrary, the Davidson firm accepted the document as a true Order, and as a result withdrew its application for a writ of mandamus and contacted the District Judge to expand the reach of the Order to all defendants in the lawsuit.

Defendant's argument that sending the forged Order was not a "corrupt" act because no dishonest purpose can be inferred from the creation and facsimile transmission of the forged

Order is also without merit. (Def.'s Mem. Supp. Pre-Trial Mot., at 13.) The question is whether Reich sent the forged Order knowing that the natural outcome of sending it to the Davidson firm would be to obstruct the Ryan Beck litigation. See United States v. Neiswender, 590 F.2d 1269, 1274 (4th Cir. 1979) (interpreting similar provision in 18 U.S.C. § 1503 and holding that "[t]he defendant's design is irrelevant; if the natural result of his plan is to interfere with judicial processes, justice will be obstructed whether he hopes it is or not . . . .") The Government put forward sufficient evidence for a jury to conclude that the natural result of sending the forged Order was to obstruct the Ryan Beck lawsuit. Accordingly, the Government is not required to prove beyond a reasonable doubt the motivation for Reich's deception, whether it was to have Judge Mann recuse herself, to deceive or embarrass a hated adversary, or for future blackmailing purposes. In conclusion, I find that a rational juror could reasonably conclude that the Defendant violated 18 U.S.C. § 1512(c)(2) in sending the forged Order to the Davidson firm with the intent to obstruct the Ryan Beck lawsuit.

### 3.    *False Statement to FBI*

Lastly, Reich urges this court to find that no rational juror could have concluded from the evidence that he made a willfully false statement to government agents in the March 3 proffer session. (Def.'s Mem. Supp. Pre-Trial Mot., at 13-14.) This obstruction of justice count is grounded in 18 U.S.C. § 1001(a)(2), which states that it is a criminal act for "whoever, in any matter within the jurisdiction of the Government of the United States, knowingly and willfully . . . [to] make[] any materially false, fictitious, or fraudulent statement or representation." Id.

Defendant contends that there is a "failure of proof" to show that Reich made a materially false statement at the March 3 proffer session, because agent Katzman's testimony that Reich

never admitted to having sent the forged Order suggests that he made no statement at all regarding his culpability.  This argument is contrary to the facts.  Agent Wilfling testified that at the March 3 proffer session, when Reich was confronted with the allegation that he sent the forged Order during his 11:10 a.m. phone call to the Davidson firm fax machine, Reich stated that he had been trying to reach Joel Davidson but he accidentally dialed the Davidson firm fax machine, and that his telephone sometimes does not disconnect after a call ended.  (Tr. 600-01.)  At trial, when Reich was asked on direct how he responded in the March 3 proffer session to Agent Katzman's offer not to prosecute in exchange for admitting that he sent the forged Order, Reich testified "No, I told them distinctly no matter what . . . I would never, never say that.  I didn't do it.  As [I] sit here today, I will never say that I did something I didn't do."  (Tr. 896.)  A rational juror could have concluded from this testimony that Reich at the March 3 proffer session denied having sent the forged Order to the Davidson firm.  Accordingly, Defendant's motion for a judgment of acquittal for this obstruction of justice charge is denied.

For the reasons stated above, Defendant's Rule 29 motion for a judgment of acquittal on the grounds of insufficient evidence is denied.

## B.     Defendant's Rule 33 Motion for A New Trial

Defendant submits that a new trial is warranted on all counts because Reich's expert witness, Mark Alcock, corroborated Reich's testimony that he "inadvertently" made the phone call to the Davidson law firm, and the Government did not adequately rebut this expert testimony.  (Def.'s Ltr. Br., dated Nov. 30, 2005, at 5.)  Reich's Rule 33 motion is based on Alcock's purportedly "uncontradicted testimony" that (1) the forged Order was not created on the seized computers; (2) Reich's fax modem did not send the forged Order; (3) Defendant could not

have created the subject fax by taping pages together or using tractor paper; (4) Government's Exhibit 1 never was a fax; and (5) "when Defendant connected to the Davidson firm fax machine, his computer modem 'latched' onto the Davidson machine after Defendant hung up, until it timed out." (Id.)

As stated supra, Alcock's testimony that Government Exhibit 1 was never a fax and could not have been sent via facsimile transmission was indeed contradicted by expert testimony and by other evidence adduced at trial. The Government's expert witness, Cameron Smith provided lengthy testimony that the forged Order and transmission log are consistent with the use of a fax machine, such as the Canon Fax Phone 8, to send a fax at 9600 bps to the HP LaserJet 3100 in which the second page was three pages long. Furthermore, Defendant's contention that it was "uncontradicted" that Reich could not have taped the last three pages together or used tractor paper to fax the forged Order is contrary to the facts. By Alcock's own admissions, he only made two attempts to send a fax with the last three pages taped together, he never attempted to send a fax with tractor paper, and he did not test the capability of the Canon Fax Phone 8 to fax attached pages. (Tr. 1000-02.) In contrast, Smith's uncontested testimony was that the forged Order could have been sent as a three page attached document using tractor paper. (Tr. 463.)

Alcock's opinion that Defendant's fax modem 'latched' onto the Davidson machine after he disconnected the call is contradicted by Smith's uncontested testimony that the Davidson firm fax machine times out after 41 seconds. Alcock's 'latching' theory does not on its face explain why the fax log records would reflect a call lasting several minutes if the Davidson firm fax machine is designed to terminate calls after 41 seconds. Although Alcock at trial dismissed this contradiction by positing, essentially, that anything is possible when a fax modem malfunctions,

he also admitted that it was possible that there was no malfunction and that Reich sent a fax. (Tr. at 1178-1180.) Under the circumstances, the jury was justified in crediting Smith's opinion that the fax modem could not have 'latched' onto the call because the HP LaserJet 3100 would have terminated the call after 41 seconds.

With respect to the remainder of Alcock's testimony, specifically that the forged Order was not created on the seized computers and that Reich's fax modem did not send the forged Order, the Government was not required to prove these facts. Inasmuch as Defendant argues that a new trial is necessary because Defendant offered expert testimony tending to disprove two subsidiary facts of a possible means by which Reich sent the forged Order, this argument lacks merit because "[t]he burden does not operate upon each of the many subsidiary facts upon which the prosecution may collectively rely to persuade the jury that a particular element has been established beyond a reasonable doubt." United States v. Viafara-Rodriguez, 729 F.2d 912, 913 (2d Cir. 1984). Therefore, the question before this court is whether the weight of the evidence supports beyond a reasonable doubt the allegation that Reich faxed the forged Order to the Davidson firm.

Assuming, *arguendo*, that Alcock's testimony showed that the forged Order was not created on Reich's seized computers or sent using Reich's seized fax modem, the weight of the evidence supports the inference that Reich was otherwise capable of creating and faxing the forged Order from his home. Reich could have converted the June 3, 2003 Order into the forged Order on a typewriter using manual instruments, or on a different computer not seized by the Government. Defendant could have sent the forged Order with the Canon Fax Phone 8 that he admitted to owning at one time, or some other fax machine that the Government did not seize.

19

The testimony of the Davidson firm employees that they received the forged Order at the same time that Reich called the fax machine and that Reich was the only person to have called that day who could have created the forged Order was credible.  Alcock did not in his testimony create a reasonable doubt as to Reich's ability to send the forged Order.  Accordingly, the weight of the evidence supports the jury's conclusion that the Defendant sent the forged Order via fax to the Davidson firm fax machine.

The decisional law relied on by Reich in support of his motion supports this conclusion.  In Sanchez, the Second Circuit reversed a district court that granted a Rule 33 motion because the trial judge erroneously rejected the testimony of three police officers because of "insignificant" discrepancies in their testimony.  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).  In Ferguson, the Second Circuit upheld a new trial order by the district court in a trial for conspiracy to commit murder in aid of racketeering, on the basis that the prosecution failed to provide any evidence showing the necessary motive element that the act was for pecuniary gain or for gang membership or status.  United States v. Ferguson, 246 F.3d 129, 135-136 (2d Cir. 2001).  See also United States v. Morales, 902 F.2d 604,  (7th Cir. 1990) (Posner, J.) (granting a new trial because of the discrepancies in the only witness's testimony and aspects of the physical evidence, and the harsh minimum sentence for conviction).

As in Sanchez, this is not a case in which "testimony is patently incredible or defies physical realities . . . ."  Sanchez, 969 F.2d at 1414.  The Government presented competent and admissible evidence demonstrating that Reich had the capacity to fax the forged Order from his home.  Unlike Ferguson, in which there was no proof to support an element of the charged offense, whether Reich created and sent the forged Order via his scanner and fax modem are

subsidiary facts that are unnecessary for the jury to find that Reich created and sent the forged Order beyond a reasonable doubt.

In conclusion, this court finds that the weight of the evidence supports the conclusion that Reich faxed the forged Order to the Davidson firm fax machine, and Reich's motion is therefore denied.

**C.      Continuation of Bail Pending Appeal**

The defense moves for bail pending appeal pursuant to 18 U.S.C. § 3143(b)(1), which provides that:

> a judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds . . . by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and . . . that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . .

reversal, a new trial, or a sentence that does not include imprisonment on all counts.  Id. Therefore, in order to grant Defendant's motion for bail pending appeal, I must find that (1) Reich is not likely to flee or pose a danger to the safety or any other person or the community; (2) his appeal is not for the purposes of delay; (3) the appeal raises a substantial question of law or fact; and (4) that if the Second Circuit decides the appeal in a manner favorable to Reich, whether that decision is likely to result in a reversal or a new trial on all counts.  See United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985)

With respect to the first element, Reich is unlikely to flee or pose a danger to any person or the community.  The Government does not dispute this.  I did not find Reich to be a flight risk or a danger to the community before trial, and I decline to do so now.  See United States v.

21

DiSomma, 951 F.2d 494, 497 (2d Cir. 1991) ("trial judge's close familiarity with the evidence presented in the case" affords discretion to trial judge in determining whether the defendant poses a danger to the community).

The second and the third elements of this analysis are interrelated, because whether or not an appeal is made to delay the sentence depends in large part on whether any substantial appeal questions are presented. The Second Circuit defines a "substantial" question as "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." United States v. Randell, 761 F.2d 122, 124 (2d Cir. 1985) (internal quotation omitted) (finding this articulation of a "substantial" question to be the most appropriate).

In viewing the totality of the evidence, Defendant in his post-trial motions has not raised any close questions for appeal.[4] The Government provided strong evidence on all three counts for which Reich was convicted, and any conclusions of guilt that required an inference are well within the boundaries of permissible inferences set forth by the Second Circuit. Further, while the standard for a Rule 33 motion for a new trial is lower, a trial court is given discretion in deciding whether to grant a Rule 33 motion. See United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 1997) (reviewing a district court's ruling on a Rule 33 motion for abuse of discretion, and finding that "the district court's holding is not an abuse of discretion even though we may have decided differently if we were the trial judge"). As a result, I find that the Rule 29 and Rule

---

[4] The only potentially open question, whether 18 U.S.C. § 1512(c)(2) requires a showing of deception of the court, does not present a substantial question on appeal because there was sufficient evidence for the jury to conclude that Reich in sending the forged Order intended to deceive the Second Circuit. Moreover, as this question implicates only one of the three counts of which Reich was convicted, it does not provide a basis for bail pending appeal.

33 motions presented to me do not pose close questions for appeal purposes.

Defendant in his response to the Government's opposition to bail pending appeal submits that his withdrawn motions should be considered in deciding whether his appeal raises any substantial questions of law or fact. (Def's Ltr. Br., dated Jan. 10, 2006, at 2-3.) In particular, Defendant contends that his withdrawn Rule 29 motion based on the Government's impeachment of Reich's character during the cross-examination of a character witness presents a substantial question of law. (Id.) As Defendant has previously raised this objection, and Defendant submitted briefing on the issue before withdrawing it, I shall now consider this ruling strictly for the purposes of whether it raises a substantial question of law or fact.[5]

Defendant's Rule 29 motion based on improper impeachment of Reich's character argues that the Government improperly cross-examined James Pelzer, a character witness for Reich. Pelzer testified on direct examination that Reich is "a person of high honesty and integrity, a person that you can trust . . . and . . . others share that same opinion. (Tr. 813.) On cross-examination, the Government sought to attack Reich's character by asking about an unauthorized change in his law partner's life insurance policy in violation of the partnership agreement. (Tr. 817.) At a hearing, I examined a partnership agreement between the partner and Reich, in which each had life insurance paid by Reich, the proceeds of which went to their own families in the event of their death. (Tr. 822.) The agreement stated that if Reich sought to change the terms of the agreement, that he would have to notify his partner. (Tr. 823.) Lastly, I examined

---

[5] I shall not, however, delve into unarticulated "numerous other issues which had been litigated prior to, and during the course of the trial," (Def's Ltr. Br., dated Jan. 10, 2006, at 3) as it is Defendant's burden to overcome the presumption of post-trial detention pending appeal. See Randell, 761 F.2d at 124-25.

correspondence that established that Reich changed the terms of the agreement after the partner was diagnosed with cancer without consulting the partner.  (Tr. 823-25.)  Based on that proffer, I allowed the following question over defense counsel's objection:

> Mr. Pelzer, if I told you that Mr. Reich had changed the beneficiary of an insurance policy away from Mr. Schapiro's family members, designating the law firm the beneficiary in the event of Mr. Schapiro's death, without notice to Mr. Schapiro and in violation of the partnership agreement that the two of them had, would that change your opinion or the opinion of the community . . . with regard to the defendant's honesty or good character?

(Tr. 847.)

"Once a defendant offers character testimony, the prosecution is afforded substantial latitude to rebut such evidence." United States v. Russo, 110 F.3d 948, 952 (2d Cir. 1997). Federal Rule of Evidence 405 provides that if the defense puts forward a character witness to testify to the defendant's good reputation, that "[o]n cross-examination, inquiry is allowable into relevant instances of conduct." F.R.E. 405(a).  The cross-examination is permitted to evaluate the character witness's credibility and knowledge of the defendant.  United States v. Birney, 686 F.2d 102, 108 (2d Cir. 1982).  Before allowing the prosecution to attack a defendant's credibility by asking character witnesses on cross-examination about a specific instance of conduct, the trial court should ascertain that the prosecution has a good faith belief that the act occurred, and that the incident is relevant to the character trait at issue.  Michelson v. United States, 335 U.S. 469, 481 n.18 (1948).  The Second Circuit reviews "a trial court's ruling on the admissibility of character evidence for an abuse of discretion." United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998); see also Michelson v. United States, 335 U.S. 469, 480 (1948).

With these principles in mind, there is no substantial question presented as to whether

this question was permissible under Federal Rule of Evidence 405.  The defense counsel offered

a character witness who testified to Reich's reputation for honesty and integrity in the New York

legal community.  On cross-examination, the prosecution is entitled to ask the witness about an

act, based upon a good faith basis to believe that the act occurred, that tended to show Reich's

character for dishonesty.  Further, Reich's propensity for integrity and honesty was relevant to

the charges that he would seek to deceive an adversary's counsel and obstruct a judicial

proceeding through the use of a forged Order.

Defendant argues that the insurance agreement was a "private" issue that was not

intended to test the witness's knowledge of Reich, but simply to prejudice him in the eyes of the

jury.  (Def. Mem. Supp. Pre-Trial Mot., at 16-22.)  Defendant relies on United States v.

Monteleone, 77 F.3d 1086, 1089 (8th Cir. 1996), in which the Eighth Circuit held that the

prosecutor must have a good faith belief that the incident is "likely to have become a matter of

general knowledge, currency or reputation in the community."  Id. (quoting United States v.

Duke, 492 F.2d 693, 696 (5th Cir. 1974)).  The Eighth Circuit reversed a conviction for improper

character impeachment because the prosecution asked a character witness about the defendant's

alleged perjury as a witness in a grand jury proceeding.  Id. at 1090.  Because of the judicially

mandated secrecy surrounding grand jury proceedings, the court found that it was "patently

unlikely" that the public would be aware of the alleged perjury.  Id.; see also Duke, 492 F.2d at

696 (private nature of alleged bad act demonstrated by the fact that the prosecutor learned of the

incident through grand jury testimony).

The private nature of the grand jury proceeding in Monteleone is distinguishable from the

instant violation of the partnership agreement.  The prosecution offered a letter from Reich's

partner's family regarding the violation of the partnership agreement, which, unlike the grand jury in Monteleone, was not legally bound to secrecy. Furthermore, the question by the prosecution to test Mr. Pelzer's knowledge of Reich's reputation for honesty and integrity in the New York legal community involved a violated agreement between partners in a New York law firm, the precise community that was likely to know about this incident. Defendant's characterization of the private nature of the law partnership is belied by Pelzer's own testimony, in which he admitted having known that Reich practiced with the law partner and that the partner had recently died. (Tr. at 817.) Furthermore, in contrast to Monteleone where the grand jury statement at issue was never shown to be perjurious, Monteleone, 77 F.3d at 1090, there is no dispute that Reich changed the policy without his law partner's consent in violation of the partnership documents. (See Tr. at 825-26.) In short, the substance of the Government's Rule 405 question does not approach the type of conduct considered private by the Eighth Circuit in Monteleone.[6]

Whether the Prosecution was entitled to question Pelzer about Reich's change to his law partner's life insurance policy under Federal Rule of Evidence 405, after this court determined that there was a good faith basis for the question and that it was relevant to the charged offenses, does not present a close question. Moreover, even if this ruling were incorrect, it would be

---

[6] Defendant further argues that this question should not have been permitted because of its prejudicial nature. (Def.'s Mem. Supp. Pre-Trial Mot., at 22.) Balancing relevancy against prejudice is governed by Federal Rule of Evidence 403, which states that the trial court may exclude evidence if it "is substantially outweighed by the danger of unfair prejudice." F.R.E. 403. I find that the question did not cause unfair prejudice, but rather legitimately probed the character witness's knowledge of Reich. As Rule 403 provides discretion to the trial judge, and I found that its probative value outweighed the likelihood of unfair prejudice, this does not present a substantial question on appeal.

harmless error, as there was strong evidence as to Reich's guilt. Accordingly, there is no substantial question raised for appeal purposes by this court's decision to permit the Prosecution to question Pelzer about Reich's violation of the partnership agreement.

I will briefly address the remaining arguments that Defendant has raised for appeal. Reich's argument that the search warrant of his home was issued based on false information does not raise a substantial question because even if true, the warrant was supported by probable cause after excising the allegedly false information. See United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) (finding that remaining portions of an affidavit with false information supported probable cause). Furthermore, Reich's argument that the Government's summation was improper in light of my rulings limiting his cross-examination fails because "[t]he scope and extent of cross-examination are generally within the sound discretion of the trial court." United States v. Weiss, 930 F.2d 185, 197 (2d Cir. 1991). Assuming, *arguendo*, that any of these rulings were improper, they were harmless error, as the purported improper comments did not substantially influence the jury in light of the strong evidence presented by the Government showing Reich's culpability for the charges of which he was convicted. See United States v. Pedroza, 750 F.2d 187, 197 (2d Cir. 1984) (citing Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

In conclusion, as Defendant raises no substantial questions of law or fact, I find that Reich's appeal would simply be for the purposes of delay. As a result, I need not reach the question of whether these questions, if successful, would have the effect of overturning or ordering a new trial of all charges. Therefore, Reich's motion for bail pending appeal is denied.

**D.     Changes To The Transcript**

Lastly, Reich moves for a number of changes to the trial transcript.  Reich's motion is governed by Federal Rule of Appellate Procedure 10(e), which provides that this court "has the power to resolve a dispute over the record in the first instance."  United States v. Zichettello, 208 F.3d 72, 93 (2d Cir. 2000) (interpreting Fed. R. App. P. 10(e)).  The district court reconstructs the record at its discretion unless the record "'was intentionally falsified or plainly unreasonable.'"  Id. (quoting United States v. Keskey, 863 F.2d 474, 478 (7th Cir. 1988)).

On page 817, lines 17 - 20, the Government asks Pelzer:  "Would it change your opinion of Mr. Reich or would it change, in your opinion, would it change the community's view of Mr. Reich if you learned about Mr. Reich's changing the beneficiaries of an insurance policy of Mr. Schapiro?"  (Tr. 817.)  Mr. Mahler, Reich's former defense counsel who was present when the question was asked, posits that the reporter failed to capture the following words at the end of that sentence:  "from Mr. Schapiro's children to himself, in violation of a partnership agreement, the day after he learned that Mr. Schapiro had terminal cancer."  (Decl. of Stephen Mahler ¶ 19.) The Government states that it did not reference "terminal cancer in front of the jury nor did the government at that time refer to Mr. Schapiro's children or that they were young . . . ."  (Gov't Mem. Opp. Post-Trial Mot., at 31 n.13.)

My review of the transcript shows that the Government in its cross-examination of Pelzer never mentioned that Schapiro had terminal cancer or that he had children.  This is supported by events subsequent to the initial question.  During this cross-examination, there was a lengthy discussion outside the presence of the jury about whether this question was permissible, and if so, in what form, and I took the precaution of instructing the prosecutor that "you are not to

28

discuss cancer in asking the question . . . ." (Tr. 839). The prosecutor's ultimately permitted question did not mention cancer, Schapiro's death, or his children. (Tr. 847.) The record appearing correct as stated, I deny Defendant's motion to change this portion of the transcript.

Regarding this court's statement on page 831, my recollection is, and I direct that the transcript be modified to reflect from line 2 on page 831 the following: "Katz. The person who knows best what happened with the insurance policy is sitting in the courtroom."

As there is no objection to any of the other modifications to the transcript, I direct that the transcript be modified in the following manner: "Vuscone V-U-S-C-O-N-E" changed to "Biscone B-I-S-C-O-N-E" on page 823, line 19; "DeBono" changed to "Bodenmiller" on page 824, line 5; and "firearms" changed to "telephones" on page 986, line 14.

## IV.     Conclusion

Having considered thoroughly the entire case and Defendant's specific arguments, the court concludes that the guilty verdict rendered by the jury was amply supported by competent, satisfactory and sufficient evidence properly admitted in the course of a fair trial, and that Defendant raises no substantial questions on appeal. Accordingly, the Defendant's motions for a judgment of acquittal pursuant to Rule 29 of the Fed. R. Crim. Pro. and for a new trial pursuant to Rule 33 of the Fed. R. Crim. Pro., and his application for bail pending appeal are hereby DENIED. Defendant's motion to modify the transcript pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: March 10, 2006                              /s/ Nicholas G. Garaufis
       Brooklyn, NY                                Nicholas G. Garaufis
                                                   United States District Judge